**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**RAMONE WESTBROOK,**
**(#27515-055),**

        **Petitioner,**

**v.**
                                    **CIVIL ACTION NO. 2:26-cv-48**

**J. BIENEMY, WARDEN**
**FCC PETERSBURG,**

        **Respondent.**

## OPINION AND ORDER

In his Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, (ECF No. 1), pro se Petitioner Ramone Westbrook ("Westbrook" or "Petitioner") seeks federal habeas relief, alleging that the Federal Bureau of Prisons ("BOP") failed to apply earned credits to his prerelease custody date as required by the First Step Act ("FSA"). Pet. (ECF No. 1, at 2-3, 6). Respondent moved to dismiss the Petition, (ECF No. 7), arguing that Westbrook failed to exhaust administrative remedies and that his claims are barred by statutory provisions that restrict judicial review of BOP risk-level categorization, Resp't's Mem. L. Supp. Resp't's Mot. Summ. J. ("Resp't's Mem.") (ECF No. 8, at 9). The Court provided Westbrook with the required notice to pro se plaintiffs under Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), (ECF No. 9), Westbrook opposed Respondent's Motion, (ECF No. 12), and the Government replied, (ECF No. 13).

Both parties consented to proceed before a United States Magistrate Judge, and the court referred the matter to me to resolve pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (ECF Nos. 14, 16, 17). For the reasons set forth below, the Respondent's Motion

for Summary Judgment is GRANTED and Petition is DISMISSED without prejudice for failure to exhaust.

## I.    BACKGROUND

Westbrook is a federal inmate, currently serving a 180-month prison sentence after being convicted of conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846 on February 19, 2019. Sentencing Order, United States v. Westbrook, No. 1:17-cr-00162-001, (W.D.N.Y. Feb. 19, 2019) (ECF No. 177, at 1-2). Following his release, Westbrook will be placed on supervised release for a term of sixty months, or five years. Id. at 3. Petitioner's home detention eligibility date is October 28, 2029, and he is projected for release April 28, 2030. Resp't's Mem. Ex. 1 ("Medley Decl."), Attach. 4 (ECF No. 8-1, at 16-17). His habeas petition challenges the BOP's failure to apply earned credits to his prerelease custody under the First Step Act. Pet. (ECF No. 1, at 2-3, 6). Westbrook has earned 365 days of FSA earned time credits towards release that have not been applied to his prerelease custody date. Id. at 12-13.

On December 20, 2025, Westbrook was determined to be a medium recidivism risk based on his most recent Prisoner Assessment Tool Targeting Estimated Risks and Needs ("PATTERN") or FSA Risk Assessment score. Medley Decl. Attach. 1 (ECF No. 8-1, at 7-9). At his previous PATTERN Assessment on July 10, 2025, Petitioner was also determined to be a medium recidivism risk. Id. Attach. 3 (ECF No. 8-1, at 4, 13-15). At the time of Westbrook's December 2025 assessment, he had completed seventy-five programs and thus had received the maximum negative score for the "programs completed" risk factor. Id. ¶ 11 (ECF No. 8-1, at 3). Because Westbrook has a medium PATTERN score, he is not eligible for his earned time credits to be applied. See 18 U.S.C. § 3624(g)(1)(D)(i)(I). However, inmates can also become eligible for their earned time credits to be applied if they have a petition granted by the warden. See id. §

2

3624(g)(1)(D)(i)(II). Westbrook has not petitioned the warden to have his earned time credits applied. Westbrook's responsive brief describes a conversation with the D-South Case Manager about petitioning for an exemption, but this was after he had filed his § 2241 petition. He alleges the Case Manager told him to wait and "see what happens" with his Petition before submitting the exemption form to the warden. Resp. Resp't's Mem. L. Supp. Resp't's Mot. Summ. J. ("Pet'r's Resp.") (ECF No. 12, at 2). Additionally, Westbrook began, but did not complete, the general BOP process to obtain administrative relief on his claim. He initially challenged the failure to apply his earned credits on August 27, 2025, which was denied September 8, 2025. Id. at 2. Petitioner filed his second challenge on September 10, 2025, and his third and final challenge on October 6, 2026. Id. (ECF No. 1, at 3). He received no response to his third appeal prior to filing his petition. Id.

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 requires the Court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). "A material fact is one 'that might affect the outcome of the suit under the governing law.' A disputed fact presents a genuine issue 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" Spriggs v. Diamond Auto Glass, 242 F.3d 179, 183 (4th Cir. 2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

The party seeking summary judgment has the initial burden of informing the Court of the basis of its motion and identifying materials in the record it believes demonstrates the absence of a genuine dispute of material fact. Fed. R. Civ. P. 56(c); Celotex Corp., 477 U.S. at 322-25. When

3

the moving party has met its burden to show that the evidence is insufficient to support the nonmoving party's case, the burden shifts to the nonmoving party to present specific facts demonstrating that there is a genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

In considering a motion for summary judgment, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); see Anderson, 477 U.S. at 255. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

### III.    ANALYSIS

Ordinarily, federal inmates must exhaust their administrative remedies prior to filing federal habeas petitions. McClung v. Shearin, 90 F. App'x 444, 445 (4th Cir. 2004) (unpublished per curiam opinion); see also Timms v. Johns, 627 F.3d 525, 530-31 (4th Cir. 2010); Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 760 (3d Cir. 1996). Administrative exhaustion serves two main purposes. First, it "protects 'administrative agency authority.'" Woodford v. Ngo, 548 U.S. 81, 89 (2006) (quoting McCarthy v. Madigan, 503 U.S. 140, 145 (1992)). Requiring exhaustion ensures that agencies have an opportunity to correct mistakes in their own programs and promotes adherence to agency procedure. See id. Second, because "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court," exhaustion preserves judicial efficiency. Id.

In Woodford, the Supreme Court held that the exhaustion requirement under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), required "proper exhaustion" – that is,

4

"compliance with an agency's deadlines and other critical procedural rules." 548 U.S. at 90-93. That statute does not specifically encompass § 2241 claims. See 18 U.S.C. § 1997e(a) (imposing procedural requirements on actions "brought with respect to prison conditions" (emphasis added)); Richmond v. Scibana, 387 F.3d 602, 604 (7th Cir. 2004); Smith v. Angelone, 111 F.3d 1126, 1129-30 (4th Cir. 1997); Fisher v. Johns, No. 5:11-hc-2128, 2012 WL 3266910, at *1 (E.D.N.C. Aug. 9, 2012). However, the policies favoring exhaustion are unchanged whether the requirement is statutory or judicially imposed. Only proper exhaustion effectively advances those policies. See Woodford, 548 U.S. at 90-91. Accordingly, courts generally evaluate exhaustion by § 2241 petitioners by reference to the Woodford requirements. See, e.g., Hrycuna v. Ormond, No. 2:18-cv-246, 2019 WL 1304250, at *3-4 (E.D. Va. Feb. 19, 2019), R. & R. adopted, 2019 WL 1302592 (E.D. Va. Mar. 21, 2019); Long v. Wilson, No. 3:11-cv-602, 2012 WL 1957814, at *3 (E.D. Va. May 30, 2012); cf. Carmona v. U.S. Bureau of Prisons, 243 F.3d 629, 632-33 (2d Cir. 2001) (discussing cause and prejudice standard applicable when an inmate "has not fully pursued his state remedies").

Under BOP's Administrative Remedy Program, there is a four-tiered remedy process for an inmate to raise issues relating to any aspect of his confinement. See generally 28 C.F.R. § 542. First, an inmate should informally present concerns to staff in his unit team at the BOP facility (BP-8). See id. § 542.13. If an informal complaint does not resolve the stated concerns, the inmate must submit a formal complaint (BP-9) with the Warden within 20 days to pursue an administrative remedy. See id. § 542.14. When an inmate is not satisfied with the warden's response, he may submit an appeal to the Regional Director through the appropriate form (BP-10). See id. § 542.15. If the inmate is still unsatisfied, he may file another appeal (BP-11) to General Counsel at BOP's Central Office in Washington, D.C. See id. An inmate exhausts his

5

administrative remedies only when he has filed a complaint at all four levels of the process.

While Petitioner made a good attempt to exhaust his administrative remedies by completing three levels of appeals, see Pet. (ECF No. 1, at 2-3), he failed to exhaust administrative remedies specific to the application of earned time credits to prerelease custody. Under the FSA, inmates are eligible for their earned credits to be applied for prerelease custody if they have been determined under the System to be a low or minimum recidivism risk during their last two reassessments, 18 U.S.C. § 3624(g)(1)(D)(i)(I), or if they have had a petition granted by the warden after the warden has determined that the inmate would not be a danger to society, has made a good faith effort to lower their recidivism risk through participating in recidivism reduction programs, and is unlikely to recidivate, id. § 3624(g)(1)(D)(i)(II). Because Westbrook was determined to be a medium recidivism risk at his last reassessment, he must avail himself of the process to seek the warden's approval, as outlined in the statutory framework, to have his earned time credits applied to prerelease custody. See id. § 3624(g)(1)(D)(i)(I); see also Brown v. Holzapfel, No. 5:24-cv-62, 2024 WL 3264795, at *3 (S.D.W. Va. June 6, 2024).

An inmate may petition the warden for a review of their PATTERN determination by submitting a BP-A0148, Inmate Request to Staff, during one of their regularly scheduled Program Reviews. BOP Program Statement 5410.01, First Step Act of 2018 – Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4), at 16, https://www.bop.gov/policy/progstat/5410.01_cn2.pdf [https://perma.cc/PMB9-Z8SH]. After an inmate submits a BP-A0148, the Unit Manager submits the request, along with the unit team's recommendation, to the Warden for consideration. Id.

Westbrook has not petitioned the warden to be eligible for the application of his FSA

time earned credits. He asserts that he attempted to utilize the remedy process, but that "the absence of staff who issue the forms" has made this "almost impossible." Pet. (ECF No. 1, at 10). However, Westbrook later attempted to pursue an exemption under the statute despite his claim that it was "almost impossible." Id. On December 20, 2025, Westbrook spoke to his Case Manager about getting an exemption granted by the warden, but his Petition was already in the court system at that time. Pet'r's Resp. (ECF No. 12, at 2). For Westbrook to properly exhaust his administrative remedies, he would have had to petition the warden—and obtain a determination—before he filed his suit. See Woodford, 548 U.S. at 90-92, see also Stargell v. Heckard, No. 5:23-cv-546, 2024 WL 770630, at *3-4 (S.D.W. Va. Jan. 17, 2024), R. & R. adopted, 2024 WL 767228 (S.D.W. Va. Feb. 22, 2024). Because Westbrook has not petitioned the warden, and the warden has not made the required determination, Westbrook has not fully complied with the "agency's deadlines and other critical procedural rules" as is required for proper exhaustion. Woodford, 548 U.S. at 90-92. Therefore, Westbrook has not exhausted his available remedies and is not eligible for federal habeas relief.

While the court need not resolve Petitioner's arguments on the merits given his failure to exhaust, his arguments demonstrate why it is especially important for Petitioner to exhaust his administrative remedies. Petitioner asserts that the BOP program statement for inmate eligibility of earned time credit to be applied to prerelease custody leaves out the first clause of 18 U.S.C. § 3624(g)(1)(B)—which reads, "has shown through the periodic risk reassessments a demonstrated recidivism risk reduction"—and is separated from the rest of the section about maintaining a minimum or low recidivism risk by the word "or" instead of "and." Pet. (ECF No. 1, at 14). As such, Westbrook argues that he has demonstrated sufficient recidivism risk reduction to be eligible for the application of his earned time credits. However, Petitioner incorrectly reads the statute.

7

Taking into consideration both § 3624(g)(1)(B) and § 3624(g)(1)(D), the Fourth Circuit held that if an inmate has a medium risk of recidivism, there are two paths for eligibility for prerelease custody, "(1) two subsequent reassessments of 'low' risk; or (2) the warden's approval of the prisoner's petition." Benson v. Edgefield, 174 F.4th 348, 355 (4th Cir. 2026). Based on the statute, Petitioner is only able to have his earned time credits applied to his prerelease date by lowering his recidivism risk rate to low or minimum for two reassessments or having the warden grant a petition to apply the credits. Since Petitioner currently is unable to meet the first path toward eligibility, it is particularly important he exhaust administrative remedies and petition the warden for approval in this case. Otherwise, his petition would likely fail to state a claim for relief as his PATTERN score precludes application of the credits under the plain language of the statute. See 18 U.S.C. §§ 3624(g)(1)(D) and 3625.

#### IV.   **CONCLUSION**

Because Petitioner failed to exhaust his administrative remedies as is required under federal habeas law, Respondent's Motion for Summary Judgement, (ECF No. 7), is GRANTED and the Petition, (ECF No. 1), is DISMISSED without prejudice, for failure to exhaust.

**If Petitioner intends to appeal this Final Order, he must within sixty (60) days from the date of this Order, file a written notice of appeal with the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510. Frayer v. Warden, FCI Beckley, No. 23-6054, 2023 WL 3268719, at \*1 (4th Cir. May 5, 2023) ("When the United States or its officer or agency is a party in a civil case, the notice of appeal must be filed no more than 60 days after the entry of the district court's final judgment or order.").**

IT IS SO ORDERED.

/s/
Douglas E. Miller
United States Magistrate Judge

_____
DOUGLAS E.  MILLER
UNITED STATES MAGISTRATE JUDGE

Newport News, Virginia
June 18, 2026

**Clerk's Mailing Certificate**

A copy of the foregoing Order was mailed this date to:

**Ramone Westbrook**
27515-055
Federal Correctional Complex
Petersburg Medium
P.O. Box 1000
Petersburg, Virginia 23804

and an electronic copy was provided to:

**Daniel Shean**
Assistant United States Attorney
United States Attorney's Office
101 W. Main Street
Suite 8000
Norfolk, Virginia 23510

Laura G. Griffin, Clerk

By ___/s/ J.L. Meyers___
Deputy Clerk

June 18
_____, 2026

10